IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **BERNARD BARTON,** | ) | **CASE NO. 7:11CV5000** |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| **DAVE HEINEMAN, JON BRUNING,** | ) | |
| **BRYAN TUMA, RYAN HAYES, JOHN** | ) | |
| **DOE, and JIM PARISH,** | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on Defendants' Notice of Non-Service (Filing No. 20), and Motions for Summary Judgment (Filing Nos. 22 and 32). For the reasons set forth below, Defendants' Motions for Summary Judgment are granted.

## I. NOTICE OF NON-SERVICE

On August 19, 2011, Defendants filed a Notice of Non-Service and an Affidavit in support of the Notice. (Filing Nos. 20 and 20-1, Attach. 1.) The Notice and Affidavit show that Plaintiff Bernard Barton ("Barton" or "Plaintiff") failed to properly serve Defendant Bryan Tuma ("Tuma"). Barton listed the address of the Nebraska State Patrol ("NSP") on the summons form for Tuma. (Filing No. 12 at CM/ECF p. 3.) According to the Affidavit produced by Defendants, Tuma was no longer employed by the NSP when the summons was issued. (Filing No. 20-1, Attach. 1.) In light of this, Defendants argue, Tuma did not receive proper service of process. The court agrees.

The court previously warned Barton that failure to serve a defendant by November 4, 2011, could result in dismissal of this matter as to such defendant without further notice. (Filing No. 11 at CM/ECF p. 2.) Barton failed to properly serve Tuma by November 4,

2011. In addition, Barton did not respond to the Notice of Non-Service. Therefore, the court will dismiss Barton's claims against Tuma, but will do so without prejudice.

## II. MOTIONS FOR SUMMARY JUDGMENT

### A. Background

Barton filed his Complaint in this matter on February 14, 2011. (Filing No. 1.) He filed an Amended Complaint on May 31, 2011. (Filing No. 9.) Barton's Amended Complaint is the operative complaint in this matter. Liberally construed, Barton alleged in his Amended Complaint that Ryan Hayes ("Trooper Hayes") and John Doe ("Doe") violated Barton's Fourth Amendment rights during a traffic stop. Liberally construed, Barton also alleged that Dave Heineman ("Governor Heineman"), Jon Bruning ("Bruning"), and Jim Parish ("Captain Parish") promoted and tolerated unlawful and discriminatory searches and seizures of vehicles in pursuit of economic forfeiture. The court conducted a detailed initial review of Barton's Complaint and Amended Complaint. (Filing Nos. 6 and 11.) Based on this review, the court permitted Barton to serve process on Defendants.

Governor Heineman and Bruning filed a Motion for Summary Judgment on September 8, 2011. (Filing No. 22.) Trooper Hayes and Captain Parish filed a Motion for Summary Judgment on November 8, 2011. (Filing No. 32.) In support of their Motions, Defendants filed Briefs (Filing Nos. 24 and 33) and Indices of Evidence (Filing Nos. 23 and 34). Barton has not responded to Defendants' Motions in any way and the time in which to do so has now passed.

The party seeking the entry of summary judgment in its favor must set forth "a separate statement of material facts about which the moving party contends there is no

genuine issue to be tried and that entitles the moving party to judgment as a matter of law." NECivR 56.1(a)(1). If the non-moving party opposes the motion, that party must "include in its [opposing] brief a concise response to the moving party's statement of material facts." NECivR 56.1(b)(1). Such response must "address each numbered paragraph in the movant's statement" of facts and must contain pinpoint references to evidence supporting the opposition. Id. "Properly referenced material facts in the movant's statement are considered admitted unless controverted in the opposing party's response." Id. (emphasis in the original).

Defendants submitted statements of material fact in accordance with the court's Local Rules. Further, Defendants submitted evidence that was properly authenticated by affidavit. The court deems Defendants' Motions fully submitted, and adopts the following undisputed material facts, as set forth by Defendants.

**B.    Relevant Undisputed Facts**

<u>The Parties</u>

     1.     Barton is a natural person residing at 315 W. Lynn St., Elmwood, Illinois.

     2.     Governor Heineman is and has been at all relevant times the Governor for the State of Nebraska.

     3.     Bruning is and has been at all relevant times the Attorney General for the State of Nebraska.

     4.     Trooper Hayes is and has been employed with the NSP as a full-time trooper since 1998.

     5.     Trooper Hayes received training through the Nebraska State Patrol Training Academy in 1998 and 1999.

     6.     During the 24-week training course, Trooper Hayes was instructed in the following areas: investigative stops, searches and seizures, arrests, the exclusionary rule, public and private arrests (including arrests and searches in private residences and third-

party residence), the Fourth Amendment, warrant requirements, motor vehicle searches, warrantless searches, constitutional and statutory procedures for warrants, statute requirements for obtaining and executing warrants, procedures to protect and dispose of seized property, arrest and detention of persons, Miranda rights, frisks and pat downs, affidavits, and probable cause.

7. Trooper Hayes has also received ongoing training through in-service training annually or biannually in several key areas including firearms training, defensive tactics, emergency vehicle operations, RADAR/VASCAR, CPR, and legislative updates.

8. Captain Parish is employed with the NSP as the Captain/Troop Area "D" Commander.

9. As a Troop Area "D" Commander in 2009, Captain Parish was responsible for the punctual attendance, appearance, good order, efficiency, and discipline of all members and employees under his command.

10. Captain Parish was also responsible for supervising the work of his subordinates and extending to them such guidance as may be necessary for the proper understanding of the efficient performance of their duties.

The Traffic Stop

11. In May 2009, Trooper Hayes was working in the Traffic Division of the NSP and was responsible for enforcing Nebraska laws specifically related to traffic safety and public protection.

12. On May 9, 2009, Barton was driving Barton's owned 1988 Ford Thunderbird eastward on Interstate 80 in Lincoln County, west of North Platte, Nebraska.

13. On May 9, 2009, at approximately 11:00 a.m., Hayes was patrolling Interstate 80 in North Platte, Nebraska, when he observed a vehicle traveling on Interstate 80 exceeding the posted speed limit of 75 miles per hour.

14. Trooper Hayes signaled the vehicle to pull over to the side of the road.

15. Trooper Hayes approached the vehicle and asked the driver to exit the vehicle and accompany him back to Trooper Hayes's state issued patrol car so he could collect the driver's information and run a check on his driver's license, which was standard NSP practice.

16. Barton accompanied Trooper Hayes back to Trooper Hayes's patrol car where Barton provided Trooper Hayes with a copy of his driver's license and registration.

17. While inside Trooper Hayes's patrol car, Trooper Hayes initiated a conversation with Barton as Barton's information was being processed.

18. During the conversation with Barton, Trooper Hayes observed Barton's behavior and demeanor as suspicious.

19. Trooper Hayes observed Barton was very uncomfortable, stand-offish, and would not maintain eye contact with Trooper Hayes.

20. Trooper Hayes questioned Barton about the nature of his travel and observed that Barton's responses were vague and that his story did not make sense.

21. Trooper Hayes reasonably perceived Barton's behavior to be suspicious.

22. Trooper Hayes asked Barton if Barton would give consent for Trooper Trooper Hayes to search his vehicle.

23. Barton would not consent to a search of his vehicle.

24. At approximately 11:19 a.m., Trooper Hayes detained Barton's vehicle and put a call into Lieutenant Mark Stokey with the NSP K9 Unit to conduct a search of Barton's vehicle.

25. At approximately 11:39 a.m., Lieutenant Stokey and the K9 arrived at the scene and conducted an exterior "sniff" of Barton's vehicle that resulted in a positive alert/indication of drug odor.

26. Lieutenant Stokey and Trooper Hayes searched Barton's vehicle and located a residual amount of marijuana near the front floorboard area of the vehicle.

27. No citations were issued to Barton in regard to the residue that was found.

28. Barton left the scene of the stop at approximately 12:11 p.m.

29. At no time was Barton placed under arrest by Trooper Hayes or any other NSP officers.

Events Following the Traffic Stop

30. On a later date, Barton called the NSP Troop D Headquarters and spoke with Captain Parish.

31. During the phone call, Barton complained about the May 9, 2009, traffic stop performed by Trooper Hayes.

5

32. After Captain Parish spoke with Barton, Captain Parish watched the video of the May 9, 2009, traffic stop.

33. After watching the video, Captain Parish called Barton back and informed Barton that he observed at all times during the traffic stop video that Trooper Hayes followed NSP policies and practices and at no time violated Barton's rights.

34. Following Captain Parish's review of the May 9, 2009, traffic stop, a formal internal affairs form was completed and the stop was subsequently reviewed by another NSP investigating officer who also adjudged that no misconduct had occurred during the traffic stop of Barton.

35. The complaint was closed as a "No Misconduct" case.

Facts Relating to Governor Heineman, Bruning, and Captain Parish

36. Captain Parish has no actual knowledge of a policy or practice of the NSP that "promotes and or tolerates unlawful and discriminatory seizures in pursuit of economic forfeitures, or that sanctions defective evidentiary procedures in support of false action, in furtherance of an atmosphere of public intimidation in asserting basic rights" as alleged in Plaintiff's Amended Complaint, nor has he ever instituted or implemented a policy and practice to the same effect.

37. Bruning is not responsible for training, nor has he ever trained any member of the NSP.

38. Bruning has no knowledge of or involvement in the traffic stop in which Barton was stopped.

39. Bruning has no actual knowledge of a policy or practice of the NSP that "promotes and or tolerates unlawful and discriminatory seizures in pursuit of economic forfeitures, or which sanctions defective evidentiary procedures in support of false action, in furtherance of an atmosphere of public intimidation in asserting basic rights" as alleged in Plaintiff's Amended Complaint.

40. Bruning has never instituted or implemented a policy and practice that "promotes and or tolerates unlawful and discriminatory seizures in pursuit of economic forfeitures, or which sanctions defective evidentiary procedures in support of false action, in furtherance of an atmosphere of public intimidation in asserting basic rights" as alleged in Plaintiff's Amended Complaint.

41. Bruning has never established a program of training law enforcement officers that is deliberately indifferent to the civil rights of motorists.

6

42. Governor Heineman is not responsible for training, nor has he ever trained any member of the NSP.

43. Governor Heineman has no knowledge of or involvement in the traffic stop in which Barton was stopped.

44. Governor Heineman has no actual knowledge of a policy or practice of the NSP that "promotes and or tolerates unlawful and discriminatory seizures in pursuit of economic forfeitures, or which sanctions defective evidentiary procedures in support of false action, in furtherance of an atmosphere of public intimidation in asserting basic rights" as alleged in Plaintiff's Amended Complaint.

45. Governor Heineman has never instituted or implemented a policy and practice that "promotes and or tolerates unlawful and discriminatory seizures in pursuit of economic forfeitures, or which sanctions defective evidentiary procedures in support of false action, in furtherance of an atmosphere of public intimidation in asserting basic rights" as alleged in Plaintiff's Amended Complaint.

46. Governor Heineman has never established a program of training law enforcement officers that is deliberately indifferent to the civil rights of motorists.

(Filing Nos. 24 and 33.)

### III. ANALYSIS

**A. Standard of Review**

Summary judgment should be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). It is not the court's function to weigh evidence in the summary judgment record to determine the truth of any factual issue. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-51 (1986). In passing upon a motion for summary judgment, the district court must view the facts in the light most favorable to the party opposing the motion. *Dancy v. Hyster Co.,* 127 F.3d 649, 652-53 (8th Cir. 1997).

In order to withstand a motion for summary judgment, nonmoving parties must substantiate allegations with "'sufficient probative evidence [that] would permit a finding in

[his] favor on more than mere speculation, conjecture, or fantasy.'" *Moody v. St. Charles County*, 23 F.3d 1410, 1412 (8th Cir. 1994), (quoting *Gregory v. City of Rogers*, 974 F.2d 1006, 1010 (8th Cir. 1992)). "A mere scintilla of evidence is insufficient to avoid summary judgment." *Id.* Essentially the test is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

**B.  Trooper Hayes–Qualified Immunity**

Trooper Hayes argues that he is entitled to qualified immunity because Barton has not shown the violation of any constitutional right. The court agrees and finds that summary judgment in favor of Trooper Hayes is warranted.

Qualified immunity is a question of law to be determined by the court and should ordinarily be decided long before trial. *Hunter v. Bryant*, 502 U.S. 224, 228 (1991). "Public officials, of course, are entitled to qualified immunity from liability for damages under 42 U.S.C. § 1983 if 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Domina v. Van Pelt*, 235 F.3d 1091, 1096 (8th Cir. 2000), (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In short, "qualified immunity shields a defendant from suit if he or she could have reasonably believed his or her conduct to be lawful in light of clearly established law and the information [that the defendant] possessed." *Smithson v. Aldrich*, 235 F.3d 1058, 1061 (8th Cir. 2000), (citations and quotations omitted). "The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Id.* (citations and quotations omitted). Moreover, qualified

immunity is "the usual rule" and state actors will enjoy qualified immunity in all but "exceptional cases." *Foy v. Holston,* 94 F.3d 1528, 1532 (11th Cir. 1996).

The court focuses on two questions to determine whether a state official is entitled to qualified immunity: "(1) whether, after viewing the facts in the light most favorable to the party asserting the injury, there was a deprivation of a constitutional or statutory right; and, if so, (2) whether the right was clearly established at the time of the deprivation such that a reasonable official would understand that their conduct was unlawful in the situation he confronted." *Henderson v. Munn,* 439 F.3d 497, 501-502 (8th Cir. 2006). Thus, the "initial inquiry is whether the facts as alleged show that the officers' conduct violated a constitutional right. . . . If the facts do not show a violation, [a court] need not proceed further with the qualified immunity analysis." *Brockinton v. City of Sherwood,* 503 F.3d 667, 672 (8th Cir. 2007).

Liberally construed, Barton alleges that Trooper Hayes violated Barton's Fourth Amendment rights because he questioned him about matters unrelated to the traffic stop. (Filing No. 9 at CM/ECF p. 6 ("Barton alleges unlawful diversion of primary investigative scope away from ostensible cause for stop, commencing with contentious, extraneous questioning prior to initial release to leave.").) Barton does not dispute the validity of the initial traffic stop. Rather, he alleges that Trooper Hayes's actions after he pulled Barton over violated the Fourth Amendment.

When an officer makes a routine traffic stop, the officer may "'conduct an investigation reasonably related in scope to the circumstances that initially prompted the stop.'" *U.S. v. Lyons,* 486 F.3d 367, 371 (8th Cir. 2007), (quoting *United States v. McCoy,* 200 F.3d 582, 584 (8th Cir. 2000)). In addition, the officer "may detain a motorist while the

9

officer completes certain routine tasks related to the traffic violation, such as writing a citation and completing the computerized checks of a driver's license, vehicle registration, and criminal history." *Id.*

The Fourth Amendment applies to limit any detention or search after the officer decides to allow a routine traffic offender to depart with a ticket, warning, or all clear. *Id.* Indeed, the officer "cannot continue to detain a motorist after the initial stop is completed unless the officer has a reasonable articulable suspicion for believing that criminal activity [is] afoot." *Id.* "If, during a traffic stop, an officer develops a reasonable, articulable suspicion that a vehicle is carrying contraband, he has justification for a greater intrusion unrelated to the traffic offense." *Id.* (internal quotations omitted).

Trooper Hayes stopped Barton for speeding. (Filing No. 34-1, Attach. 1, at CM/ECF p. 2.) While conducing a routine investigation related to the traffic stop, Trooper Hayes developed a "reasonable articulable suspicion" of illegal activity sufficient to detain Barton for further investigation. "While reasonable suspicion must be more than an inchoate hunch, the Fourth Amendment only requires that police articulate some minimal, objective justification for an investigatory stop." *Lyons,* 486 F.3d at 371.

Trooper Hayes, a trained and experienced officer who has been with the NSP since 1998, stated in his Affidavit that Barton's behavior raised his suspicions. (Filing No. 34-1, Attach. 1, at CM/ECF p. 3.) Specifically, Barton appeared "uncomfortable, stand-offish and would not maintain eye contact." (*Id.*) When Trooper Hayes asked Barton about the nature of his travel, Barton's responses "were vague and his story did not make sense." (*Id.*) These statements in Trooper Hayes's Affidavit establish that Trooper Hayes had at

least a minimal, objective justification for an investigatory stop.  In other words, Trooper Hayes was justified in detaining Barton for further investigation.  Barton has offered no evidence or argument to the contrary.

Liberally construed, Barton also alleges that the duration of the stop was unreasonable and violated his constitutional rights. (Filing No. 9.)  The undisputed facts are that the total time of the stop was approximately one hour and eleven minutes. (Filing No. 34-1, Attach. 1, at CM/ECF pp. 2-3.)  This time included the initial stop, the verification of Barton's travel documents, Trooper Hayes's questioning of Barton, the telephone call to the K9 unit, the arrival of the K9 unit, and the search of Barton's vehicle.  (*Id.*)

"A dog sniff may be the product of an unconstitutional seizure if the traffic stop is unreasonably prolonged before the dog is employed. . . . However, when police need the assistance of a drug dog in roadside *Terry* stops, it will in general take time to obtain one[.] . . . [T]he state highway patrol cannot be expected to have drug dogs immediately available to all officers in the field at all times.  *Lyons*, 486 F.3d at 372, (internal citations and quotations omitted).

Here, the traffic stop itself lasted approximately 19 minutes.  Trooper Hayes stopped Barton's vehicle at 11:00 a.m.  (Filing No. 34-1, Attach. 1, at CM/ECF p. 2.)  At approximately 11:19 a.m., Trooper Hayes detained Barton's vehicle and called the K9 unit. (*Id.* at CM/ECF p. 3.)  There is no evidence that Trooper Hayes unnecessarily delayed the initial stop.

The canine unit arrived at approximately 11:39, only 20 minutes after being called. (*Id.*)  This 20 minute wait was not excessive under the circumstances.  *See Lyons*, 486 F.3d at 372 (holding that 31 minute detention to wait for drug dog was reasonable where

11

the officer requested the dog immediately after developing reasonable suspicion); *United States v. White*, 42 F.3d 457, 460 (8th Cir. 1994), (determining that it was reasonable for an officer to detain a truck for 80 minutes while awaiting the arrival of a drug dog where the officer "acted diligently to obtain the dog, and the delay was caused only by the remote location of the closest available dog.").

Lieutenant Mark Stokey ("Stokey") and the drug dog arrived at the scene at approximately 11:39 p.m., and conducted an exterior sniff of the vehicle. The drug dog alerted, Trooper Hayes and Stokey searched the vehicle, and located a residual amount of marijuana near the front floorboard area. (Filing No. 34-1, Attach. 1, at CM/ECF p. 3.) The dog sniff and search of Barton's vehicle lasted approximately 30 minutes. (*Id.*) Barton has provided no evidence that Trooper Hayes was dilatory in his search of the vehicle or that there was any unnecessary delay. Based on the undisputed evidence, the court finds that, after viewing the facts in the light most favorable to Barton, Trooper Hayes did not clearly violate Barton's constitutional rights. Accordingly, Barton's claim for monetary damages against Trooper Hayes in his individual capacity is dismissed.

**C.     Bruning, Governor Heineman, and Captain Parish**

Liberally construed, Plaintiff's Amended Complaint alleges that Governor Heineman, Bruning, and Captain Parish promoted and tolerated unlawful and discriminatory searches and seizures of vehicles in pursuit of economic forfeiture. (Filing No. 9.) Here, the court begins its analysis by noting that Governor Heineman, Bruning, and Captain Parish's statements of fact in support of their motions for summary judgment are "considered admitted" under Nebraska Civil Rule 56.1(b). Governor Heineman, Bruning, and Captain

Parish's unopposed statements of fact explain that they had no knowledge of a policy or practice of the NSP that promotes or tolerates unlawful and discriminatory seizures in pursuit of economic forfeitures, and they did not implement any such policies or practices. (Filing No. 23-1, Attach. 1, at CM/ECF pp. 1-2; Filing No. 23-2, Attach. 2, at CM/ECF pp. 1-2; and Filing No. 34-3, Attach. 3, at CM/ECF pp. 4-5.)

Barton presented no arguments, facts, or evidence disputing these statements of fact. Indeed, Barton did not oppose Defendants' Motions for Summary Judgment in any way. Because Barton has done nothing to controvert Defendants' unopposed statements of fact, he has not raised a genuine issue of material fact from which a reasonable jury could conclude that constitutional violations occurred. Therefore, the court grants summary judgment to Governor Heineman, Bruning, and Captain Parish.

**D.    Defendant Doe**

Defendant Doe, named in the Amended Complaint, has not joined in Defendants' Motions. As of the date of this Memorandum and Order, Barton has not identified Doe or properly served him with process. See *Robinett v. Correctional Training Facility,* 2010 WL 2867696, *4 (N.D.Cal. July 20, 2010), ("[U]sing Doe defendants creates its own problem: those persons cannot be served with process until they are identified by their real names.") However, Barton did attempt to serve Doe. (*See* summons form addressed to "John Doe" at Filing No. 13.)

The Eighth Circuit Court of Appeals has held that dismissal of a "John Doe" pleading is only proper when it appears that the true identity of the defendant cannot be learned through discovery or the court's intervention. See *Munz v. Parr,* 758 F.2d 1254, 1257 (8th

13

Cir. 1985), ("Rather than dismissing the claim, the court should have ordered disclosure of Officer Doe's identity by other defendants named and served or permitted the plaintiff to identify the officer through discovery. . . . Munz should have then been permitted to amend the complaint and serve the identified defendant.").

Out of an abundance of caution, the court will not dismiss Doe from this matter at this time. Rather, Barton shall be given 45 days in which to identify Doe, amend his complaint to state a claim against the identified defendant, and serve the identified defendant. According to Defendants' pleadings, the NSP dog handler, referred to as "John Doe" by Barton, is actually Lieutenant Mark Stokey. (*See* Filing No. 34-1, Attach. 1, at CM/ECF p. 3.)

IT IS THEREFORE ORDERED that:

1. Defendants' Motions for Summary Judgment are granted (Filing Nos. 22 and 32);

2. Plaintiff's claims against Tuma are dismissed without prejudice;

3. Plaintiff's claims against Trooper Hayes, Governor Heineman, Bruning, and Captain Parish are dismissed with prejudice;

4. This matter remains pending against Doe. Barton shall have 45 days in which to identify Doe, amend his complaint to state a claim against the identified defendant, and serve the identified defendant. Failure to adequately do so will result in dismissal without further notice;

5. The clerk's office shall send ONE summons form and ONE USM-285 form to Plaintiff, together with a copy of this Memorandum and Order. Plaintiff must complete the forms and return them in accordance with this Memorandum and Order;

6. Upon receipt of the completed forms, the clerk's office will sign the summons form, to be forwarded with a copy of the Amended Complaint to the U.S. Marshal for service of process. The Marshal shall serve summons and the Amended Complaint without payment of costs or fees. Service may be by certified mail pursuant to Federal Rule of Civil Procedure 4 and Nebraska

  law in the discretion of the Marshal. The Clerk of the court will copy the Amended Complaint, and Plaintiff does not need to do so; and

7. The court directs the clerk's office to set a case management deadline in this matter using the following text: **April 24, 2012**: **Deadline for Plaintiff to identify and serve defendant, and amend complaint**.

DATED this 9th day of March, 2012.

           BY THE COURT:

           s/Laurie Smith Camp
           United States District Judge

---

  *This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.